# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1853.

---

### JOHN BALDWIN v. HENRY H. RICHMAN et al.

1. H., under the will of his father, became seized of an estate which, under the statute of 1784, became a fee simple in his eldest son J., who, being under a misapprehension of his rights, and supposing that under the will of his grandfather he was tenant in common with his brother and his two sisters, applied to the Orphans' Court for a division of the land. Each of the children took possession of the shares severally allotted to them, and the brother afterwards conveyed his share by deed to the complainant, having previously expended money upon it, improved and fenced it, cut off the wood and paid the taxes upon it from the time of its allotment to him until his sale of it. J. died intestate. His children, the defendants in this case, had brought an ejectment against the complainant, and were in possession under that judgment.

2. *Held,* that the complainant, under the circumstances of the case, was not entitled to an account against the defendants for the improvements he has put upon the property, or the consideration money he had paid for the land.

3. *That the grantor of the complainant* could not in equity recover of his brother the value of the improvements he had put upon the premises, unless it appeared that the expenditures made had been induced by the conduct of J., and that that conduct was such as to make it against good conscience that he should reap an advantage from it at his brother's expense. *The mere fact of a mistake* on the part of J. could give the grantor of the complainant no equitable claim for relief.

4. That this could not be likened to a case where a man having title to land, stands by and encourages the sale without forbidding it. For J. was wholly ignorant of his legal rights, and they were rights of which his brother *had the same knowledge as he had.*

5. The maxim that where one of two innocent persons must suffer, he shall suffer who by his own acts occasioned the confidence and loss, is not applicable, for *both acted with full knowledge of all the facts.*

6. That the complainant stands in a very different position from his grantor. If his grantor had an equitable claim to be paid for the improvements, he has no equity, unless he is a *bona fide purchaser without notice.*

7. That the bill should have been demurred to, for want of the allegation.

Henry Richman, deceased, by his last will, dated 6th January, 1779, proved 15th September, 1787, devised as follows, viz., " I give unto my son, Henry Richman, the plantation I now live on," &c. " I give it to my son Henry during his natural life, and then to the heirs of his body, lawfully begotten, forever."

Henry Richman, the devisee, entered into possession, and then by deed, 5th January, 1796, conveyed the premises so devised to him, to one Thomas Parvin.

Henry Richman, (2d,) died about 1825, leaving four children ; Jeremiah, (the eldest son,) Benjamin, Charlotte and Constantia, who, upon his death, brought suit to recover the premises so conveyed to Parvin. The heirs of Parvin relinquished the premises, and on the 14th of January, 1826, before the day to which the ejectment was returnable, made and executed to Jeremiah Richman, (the eldest son, and father of the complainants,) an absolute release and quit-claim of the land so conveyed to their father, Thomas Parvin.

At September Term, 1826, the said Jeremiah Richman applied to the Orphans' Court of the county of Salem, for a division of the land devised by his grandfather, Henry Richman, among the heirs-at-law of his father, Henry Richman, (2d). The petition presented by him to the Orphans' Court recited that the " petitioner, together with Benjamin, Constantia and Charlotte Richman, are heirs of Henry Richman, late of the county of Salem, deceased, who devised certain real estate, of the township of Pittsgrove, to the said heirs, (after the decease of their father, Henry Richman, Jr.,) by his last will and testament, which they now hold undi-

vided and as tenants in common," &c.   He therefore prayed
the court to appoint commissioners " to assign and set off to
each one of said heirs, their shares by metes and bounds,
agreeably to the will of said deceased."   The court upon this
petition appointed commissioners to make such partition, who
divided the premises accordingly, and made their report there-
of, which was confirmed at December Term, 1826.   The said
children of Henry C. Richman took possession of the shares
so severally allotted to them, and Benjamin Richman, on the
5th of January, 1836, conveyed his share, by deed, to John
Baldwin, who is in possession of the same, for the sum of
two hundred and fifty dollars.

Jeremiah Richman died May, 1845, intestate, not having
sold, or otherwise made any disposition of the premises de-
vised by the will of his grandfather, leaving the complain-
ants his children and heirs-at-law.

These facts are undisputed.

The bill alleges that Benjamin Richman used and occupied
the land as his own, from the time of its allotment to him
until his sale of it to Baldwin; that he expended money on
it, improved and fenced it; cut off the wood, and paid the
taxes from year to year; all of which was done with the
knowledge of Jeremiah, and without his interference.   That
the defendants have commenced an action of ejectment against
the complainants, and have obtained judgment in their favor,
and have issued a writ of *habere facias possessionem* to turn
the complainant out of possession.

The prayer of the bill is, that the defendants may be per-
petually barred from further proceedings at law; or, if the
court should be of opinion that the defendants are entitled
to recover the possession, then that they may be decreed to
come to an account with the complainant for the money ex-
pended by him on the land in improvements, and for taxes,
&c., &c.

All the defendants answer the bill.   They allege that the
application to the Orphans' Court, made by Jeremiah Rich-
man, was under a misapprehension of his rights; and
that if possession was held of the land by his brother, the

taxes paid and improvements made, it was under like mis-apprehension, and they deny the right of the complainants to call upon them for remuneration.

Proofs were taken on both sides.

*W. Halsted,* for complainant.

*P. D. Vroom,* for defendants.

THE CHANCELLOR. It is admitted that Henry Richman, under the will of his father, became seized of an estate in the land in controversy, which, under the statute of 1784, became a fee simple in his eldest son, Jeremiah.

Jeremiah died intestate. His children, as his heirs-at-law, brought an ejectment to recover possession of the land. The defendant in the ejectment, who is the complainant in this suit, set up, in defence, the proceedings in the Orphans' Court, and Jeremiah's subsequent acquiescence in his brother's, and in his brother's grantee's possession, as owners, as an *estoppel,* as well against himself as those claiming under him. The Supreme Court gave judgment against the defendant in ejectment. The defendants in this suit are now in possession under that judgment.

The only question for this court now to decide is, whether the complainant, under the circumstances of the case, is entitled to an account against the defendants for the improvements he has put upon the property, and to recover their value, as well as the consideration money he paid for the land.

It is manifest that the complainant cannot maintain his claim, except under the equities which existed between his grantor and Jeremiah Baldwin. If Benjamin Richman could not, in equity, recover of his brother Jeremiah the value of the improvements which Benjamin put upon the premises, then this complainant has no right of action for his improvements. The bill is correctly framed in this view of the complainant's rights, and this is made the foundation of this suit.

Let us see, then, what equitable claim Benjamin Richman

had against Jeremiah Richman. It must be shown that the expenditures made on the land by Benjamin, were induced by the conduct of Jeremiah, and that that conduct was such as to make it against good conscience that he should reap an advantage from it at his brother's expense.

The application of Jeremiah Richman to the Orphans' Court was made under a misapprehension of his rights. He supposed that under the will of his grandfather, he was tenant in common with his brother and his two sisters. This is apparent from his petition to the court, in which he represents himself, his brother and two sisters, as tenants in common under the will of their grandfather. In fact, they were all laboring under the same misapprehension, for they had previously commenced, in the name of all of them, as tenants in common, an ejectment suit against a tenant in possession, who claimed under a deed from their father.

The proceedings in the Orphans' Court conferred no title. Their consequences upon the rights of Jeremiah were no more than if he himself had selected three men to divide the land into four equal parts, and under such division had suffered Benjamin to take possession of one of them.

The bill charges no fraud upon Jeremiah. We can hardly conceive of any fraud he could have meditated.

Under this division, Benjamin took possession of the land, and now all the consequences that have resulted are attributed to the mistake of his brother. But we ought not to forget that Benjamin did not claim title to this land under the proceedings of the Orphans' Court, nor under his brother, nor under any act of his. He claimed title under his grandfather's will. He took possession claiming under that will, adverse to his brother. He gave no consideration; and the responsibility of the mistake rests as much upon himself as upon any one else. In presenting this part of the case, the bill is altogether defective in making out any case which can possibly entitle the complainant to relief. It does not allege that Benjamin took possession of the land and improved it, under the impression that the land was his own; nor is there any allegation that it was the

conduct of Jeremiah that induced him to take possession, and make the improvements. From anything that appears in the bill to the contrary, he knew that Jeremiah was acting under a mistake, and took advantage of it. The mere fact of a mistake on the part of Jeremiah could give Benjamin no equitable claim for relief. It should appear that he was the victim of such mistake; and without any fault of his own, had sustained injury. The bill does not allege this in terms, nor do I think it is fairly to be inferred from its statements.

Again, the bill alleges that Jeremiah stood by and saw Benjamin make improvements on the land, and permitted him to pay the taxes. The improvements consisted in some fencing. The value of the fence, or the amount of the taxes are not stated. The answer makes no admission as to these matters, as they were not within the knowledge of the defendants; and the complainants have offered no proof in regard to them. It does, however, appear in proof, that Benjamin cut wood to the amount of eighty dollars in value. There is nothing to show that the use of the land, and the wood cut, were not more in value than the taxes paid, and the value of the fencing. Thus in the whole case, the complainant does not show any injury that calls for redress as between the two brothers. Unless Benjamin received some injury, there could be no equities to adjust as between him and his brother, and nothing to call for the interference of the court. It was insisted by counsel that the conduct of Jeremiah in putting his brother in possession, and permitting him to make improvements, amounted to a *constructive* fraud. Admitting this to be so, Benjamin could have no claim in equity, unless he could show that he had sustained some injury from the fraud. But this could not be likened to a case where a man having title to land, stands by and encourages the sale without forbidding it. Jeremiah was wholly ignorant of his legal rights, and they were rights of which Benjamin had the same knowledge upon what they depended that he had. Nor could the maxim be applicable, that where one of two innocent persons must suffer, he shall

suffer, who, by his own acts, occasioned the confidence and loss; because both acted with full knowledge of all the facts.

But admitting that under the circumstances of the case Benjamin Richman had an equitable claim to be paid for the improvements he put upon the land, the complainant stands in a very different position from Benjamin Richman.

The complainant has no equitable claim for relief, unless he is a *bona fide* purchaser without notice. If he purchased this property with notice that his grantor had no title, what claim can he set up in equity against the rightful owners, to be paid for his improvements? He must show his equity by his bill. He does not allege that he was such purchaser; the bill should have been demurred to for this defect. It is proved that he had notice that his grantor had no title; and that he was informed of Jeremiah Richman's title, and of the character of that title. He procured a copy of the will of Henry Richman, and had it examined. He was informed, that by the will the title was in Jeremiah Richman. It is proved that on account of the defect of title in his grantor, he purchased the property for about half its value; that after he purchased, he procured a strip of land from his neighbor to erect his buildings upon, and gave as a reason, that his title to the land purchased of Benjamin Richman was defective.

The counsel of the complainant insisted that this was not put in issue by the pleadings, and therefore the defendants should not be permitted to have the benefit of this testimony. But it was not necessary for the defendants to put the question in issue. The complainant should have made the issue. He has no case without it. He must recover upon the case made by his bill, and if that is not such as entitles him to relief, he cannot have a decree in his favor. To sustain the character of a *bona fide* purchaser *without notice*, the party must aver and prove, not only that he had no notice of his adversary's rights before his purchase, but that he had actually paid the purchase money before such notice. *B. & S. Jewett* v. *Palmer and May*, 7 *J. C. R.* 65.

The bill must be dismissed, with costs.